UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:07-HC-2042-FL

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BYRON ANTONE | RESPONDENT'S POST-HEARING<br>PROPOSED FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

Comes now the respondent, Byron Antone, by and through undersigned counsel, and respectfully requests that the Court enter the following findings of fact and conclusions of law in this matter, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

Petitioner, the United States of America ("the Government") instituted this civil action on February 23, 2007, seeking to commit Byron Antone ("Mr. Antone" or "Respondent") as a sexually dangerous person pursuant to the Adam Walsh Child Protection and Safety Act of 2006 ("the Act"). 18 U.S.C. § 4248. Docket Entry ("DE") 1. The Government's petition states that mental health personnel for the Federal Bureau of Prisons ("BOP") examined Respondent and issued a preliminary determination that he is sexually dangerous within the meaning of the Act. The petition stayed Respondent's release from federal custody pending a hearing to determine whether Respondent qualifies for commitment as a sexually dangerous person. The

1

Government's petition was filed four days prior to Respondent's scheduled date of release from BOP custody on February 27, 2007. *See id.*

An evidentiary hearing and bench trial was conducted in this case before Magistrate Judge James E. Gates on October 20, 21 and 24, 2011. At the conclusion of the hearing, Judge Gates directed the parties to file any supplemental proposed findings of fact and conclusions of law within two weeks of the filing of the transcript of the hearing with the court. After considering the testimony at the hearing, the evidentiary record, and the parties' submissions, this Court concludes that the government has failed to establish by clear and convincing evidence that Respondent is sexually dangerous to others as required by the Act and the Constitution.

The supplemental proposed findings of fact and conclusions of law are set forth below. The pre-trial proposed findings of fact and conclusions of law are incorporated by reference.

## II. TESTIMONY

At hearing, the Government called the following witnesses: Respondent Byron Antone, Dr. Amy Phenix, and Dr. Manuel Gutierrez. Drs. Phenix and Gutierrez testified as expert witnesses. The Respondent called Clement Gallop, Andre Taylor, Allan Duprey, Anne Schauder, and Dr. Roy Daum. Dr. Daum testified as an expert witness.

**Government's Witnesses**

    **A.**    **Respondent**

1. Respondent acknowledged in his testimony that he pled guilty to the charges which led to him being in BOP custody. Transcript at 22.

2. Respondent testified that due to his prior drug and alcohol use, he did not remember many of the details of his prior actions. Transcript at 25. Antone acknowledged that

2

he had used alcohol, cocaine, marijuana and huffing gas/paint fumes. Transcript at 55 - 56. Antone also suffered from blackouts as a result of his drug and alcohol use and had no recollections of many of the incidents. Transcript at 57. Respondent acknowledged, however, that he had no reason to dispute the records of his prior actions. *Id.* at 25.

      3.      Respondent testified that he has participated and continues to participate in Alcoholics Anonymous meetings to deal with his alcoholism. Transcript at 31.

      4.      Mr. Antone further testified that he had completed a 40-hour substance abuse program while in BOP custody. Transcript at 32-33. Antone stated that the treatment helped him. He further testified that "When I was using drugs and drinking, my mind was so cloudy that I couldn't make a rational decision, and after I stopped using the drugs and drinking, I could make clear decisions." Transcript at 33.

      5.      Mr. Antone testified that he requested sex offender treatment when he first entered BOP custody and was told that he did not qualify for treatment. Transcript at 39.

      6.      Upon being denied access to sex offender treatment, Mr. Antone wrote his attorney, Mr. Allan Duprey, to seek assistance in getting treatment. Transcript at 39-40. However, Mr. Antone was not offered sex offender treatment during the remainder of his BOP sentence. *See id.* When he was unable to receive the treatment he requested, Antone decided to do what he could to make his own treatment to change his life. *Id.* at 68. Antone obtained his GED and stayed sober for 14 years (including 1400 days after the date he was supposed to be released from BOP custody). *Id.* at 61-62. Although Antone knew other detainees in Butner had access to alcohol, he stayed away from alcohol and remained sober. *Id.* at 69-72. Antone

testified that he has received no write-ups for alcohol or sexual materials while incarcerated. *Id.* at 83.

      **C.**     **Dr. Amy Phenix**

7.     As an initial matter prior to Dr. Phenix's testimony, the Court noted that Government's Exhibit 3, Dr. Phenix's supplemental report, had been excluded from consideration in the case. *Id.* at 101.

8.     Dr. Phenix noted in her testimony that forensic psychologists consider the existence of a prior relationship in determining whether forced sexual activity between two persons (i.e., "date rape") is evidence of paraphilic behavior. *Id.* at 129. Dr. Phenix stated that the general view is that such behavior is not paraphilic, but that the examiner has to review the entire record to make a final determination. *Id.*

9.     Dr. Phenix testified that there are very few Native Americans in the study samples used with the Static-99R and 2002 actuarial instruments. *Id.* at 163.

10.    Dr. Phenix further testified that there are at least two studies that examined the predictive accuracy of the actuarial instruments with regard to Native Americans from Canada, and that there was a decrease in the predictive accuracy of the instruments. *Id.* at 163-64.

11.    Upon questioning by the Court, Dr. Phenix testified that absent a diagnosis of paraphilia, she would still consider the Respondent sexually dangerous based on her diagnoses of alcohol dependence and antisocial personality disorder (APSD). *Id.* at 246.

12.    Dr. Phenix's testimony appears to contradict her prior published analysis in "Antisocial Personality Disorder Is Not Enough," an article co-authored by Dr. Phenix and Dr. Jack Vognsen, in which the authors express the opinion that individuals who "have serious

4

difficulty controlling their emotions and volition in such a manner that they repeatedly commit criminal sexual acts must undoubtedly have a paraphilia." *See* Jack Vognsen, Ph.D. and Amy Phenix, Ph.D., "Antisocial Personality Disorder Is Not Enough: A Reply to Sreenivasan, Weinberger, and Garrick," Journal of the American Academy of Psychiatry and the Law, Vol. 32 No. 4 (2004).

        **D.**      **Dr. Manuel Gutierrez**

13.      Dr. Gutierrez differed from Dr. Phenix in that he diagnosed Respondent with Paraphilia NOS with the qualifier of Hebephilia as well as Paraphilia NOS Non-consent. *Id.* at 274; 326.

14.      With respect to the diagnosis of Hebephilia, Dr. Gutierrez acknowledged that research shows that it is normal for adult heterosexual men to have some sexual attraction to adolescent girls. *Id.* at 279; 325

15.      Dr. Gutierrez also acknowledged that there is debate in the field of forensic psychology as to the validity of the diagnosis of Paraphilia NOS Hebephilia. *Id.*

16.      Dr. Gutierrez further testified that Respondent would be sexually dangerous based solely on the diagnosis of APSD, with no diagnosis of Paraphilia NOS or other paraphilia. *Id.* at 284. Upon questioning regarding Dr. Phenix's prior article "Antisocial Personality Disorder Is Not Enough," Dr. Gutierrez testified that he is not familiar with the article.

17.      Dr. Gutierrez acknowledged that his score on the Static-99R actuarial differed from that of Dr. Phenix. *Id.* at 292.

18. Upon questioning by the Court, Dr. Gutierrez acknowledged that he is not aware of data or studies that attempt to distinguish between the number or percentage of serial rapists who suffer from a paraphilic condition and those who do not. *Id.* at 346.

19. Dr. Gutierrez further acknowledged that he is not aware of any studies that set forth means to distinguish between serial rapists who suffer from Paraphilia-NOS and those who do not. *Id.* at 348.

**Respondent's Witnesses**

    **A.    Clement Gallop**

20. Mr. Gallop, a treatment specialist in the commitment and treatment program at FCI-Butner, testified as to his interactions with Mr. Antone during the period Mr. Antone has been incarcerated in the Maryland Unit at FCI-Butner. Transcript at 96.

21. Gallop testified that he would see Mr. Antone on a daily basis, and have contact with him two to three times a week. Transcript at 97.

22. These contacts were initiated by Mr. Antone when Respondent was seeking advice and assistance in coping with issues in his life, including anger management issues and issues with his son. *Id.* at 98-99.

    **B.    Andre Taylor**

23. Mr. Taylor, a correction counselor at the Maryland Unit at FCI-Butner, where Respondent is incarcerated, testified as to conditions at the Maryland Unit. *Id.* at 365-66.

24. Mr. Taylor testified that although alcohol is not permitted in the Maryland Unit, he has observed a number of persons in the unit who have tested positive for alcohol use and been written up for infractions for alcohol use in the unit. *Id.* at 369.

25. Mr. Taylor testified that he has never seen Respondent with alcohol. *Id.* at 370. Mr. Taylor testified that infractions for violations of prison rules are written up as incident reports or "shots," which are then recorded in a log. *Id.* at 373. Mr. Taylor noted that to his knowledge Mr. Antone had never been written up for any infractions while at FCI-Butner. *Id.* at 374.

**C. Allan Duprey**

26. Allan Duprey, who was Respondent's attorney in the case leading to Mr. Antone's custody within the BOP, testified as to the circumstances of how Mr. Antone came to be in federal custody and Mr. Antone's attempts to receive sex offender treatment and counseling. *Id.* at 374.

27. Mr. Duprey testified that when he first met Respondent, Mr. Antone was incarcerated in tribal custody. *Id.* at 378. Mr. Duprey described the conditions of tribal custody as "appalling," and sought to get Mr. Antone access to rehabilitation services, including sex offender and drug treatment. *Id.*

28. Mr. Duprey worked with the U.S. Attorney's Office in Tucson, Arizona to transfer Mr. Antone to BOP custody pursuant to felony indictment for the offenses for which Mr. Antone was then serving tribal custody. *Id.* at 379.

29. Mr. Duprey testified that he and federal prosecutor Sandy Hanson crafted a plea agreement in order to transfer Mr. Antone to BOP custody, where they understood he would be incarcerated at FCI-Butner and have access to a sex offender treatment program geared towards Native Americans. *Id.*

30. Following Mr. Antone's transfer to BOP custody, Mr. Duprey learned that he was not given access to sex offender treatment as planned. *Id.* at 386. Upon inquiry, Mr. Duprey was informed that BOP would not give Mr. Antone access to sex offender treatment until the end of his BOP sentence. *Id.*

**D.      Anne Schauder**

31. Ms. Schauder, a U.S. Probation Officer from the District of Arizona, testified as to the resources available to Mr. Antone for sex offender treatment and supervision should he be released from BOP custody. *Id.* at 393.

32. Ms. Schauder testified that she has experience in supervising convicted sex offenders in the District of Arizona on supervised release, both on Native American reservations and off. *Id.*

33. According to Ms. Schauder, halfway houses are one option utilized by the U.S. Probation Office in Arizona to provide structured living arrangements for sex offenders on supervised release, as well as access to sex offender treatment. *Id.* at 387-98.

34. Ms. Schauder also noted that the Probation Office may use polygraph and penile phethysmographic investigation in order to determine a person's compliance with the terms of supervised release. *Id.* at 400.

35. Ms. Schauder testified that Respondent has agreed to a modification of the conditions of his supervised release, and that he agrees to enter residence at a halfway house if released from BOP custody. *Id.* at 403.

**E.      Dr. Roy Daum**

36. Dr. Daum testified that he diagnosed Respondent with the paraphilia of frotteurism, which he noted was a serious mental illness, abnormality or disorder under the Adam Walsh Act. *Id.* at 497.

37. Unlike Drs. Phenix and Gutierrez, who diagnosed Respondent with Antisocial Personality Disorder, Dr. Daum diagnosed Respondent with Borderline Personality Disorder. *Id.* at 507. Dr. Daum acknowledged that this is also a serious mental disorder, illness or abnormality. *Id.*

38. Dr. Daum testified as to changes he made in his scoring of Respondent on the Mn-SOST-R actuarial based on information received at trial. Transcript Day 3 at 29-30.

39. Dr. Daum further testified that both he and the institution where he works (Larned State Hospital) no longer use the Mn-SOST-R actuarial. *Id.* at 53.

40. Dr. Daum testified that Respondent needs both sex offender treatment and substance abuse treatment, but that he can receive both outside of a prison setting such as FCI-Butner. *Id.* at 55.

## III. FINDINGS OF FACT

41. The Court finds that all three expert witnesses agree that Respondent suffers from at least one paraphilia, as that term is defined in the DSM-IV-TR. The Court further finds that no two experts agreed as to which paraphilia(s) Respondent suffers.

42. The Court finds that all three expert witnesses agree that Respondent suffers from at least one serious mental illness, abnormality or disorder as those terms are defined under the Adam Walsh Act.

9

43. The Court finds that all three expert witnesses administered actuarial instruments utilizing factors which are purportedly "static," or unchanging, in order to determine a statistical basis of possible risk of future reoffending.

44. The Court finds that there is no agreement among the expert witnesses as to the proper score of Respondent on these actuarial instruments. The Court further finds that although the actuarials purport to analyze static, unchanging factors, both Dr. Phenix and Dr. Daum changed their scores on the actuarials based on information received at trial.

## IV. CONCLUSIONS OF LAW

45. The Court finds that Respondent suffers from at least one serious mental illness, condition, or disorder.

46. As to the diagnoses of Paraphilia-NOS Nonconsent and Hebephilia, the Court finds that given the lack of agreement among experts in the field as to the validity of these diagnoses, the Government has failed to show by clear and convincing evidence that the Respondent suffers from these conditions.

47. As to the diagnosis of Antisocial Personality Disorder, the Court finds that given the lack of agreement among experts in the field and the contradicting opinions of Dr. Phenix, the Government has failed to show by clear and convincing evidence that this diagnosis standing alone is sufficient to support civil commitment under 18 U.S.C. § 4248.

48. The Court finds that although Respondent suffers from a serious mental illness, condition or disorder, the Government has not shown by clear and convincing evidence that such conditions cause Respondent to suffer from a volitional impairment such that he would have serious difficulty refraining from sexually violent conduct or child molestation if released.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment in this matter that Byron N. Antone is not a "sexually dangerous person" and order his release from the custody of the federal Bureau of Prisons.

Respectfully submitted this 27th day of December, 2011.

THOMAS P. McNAMARA
Federal Public Defender

/s/ Joseph L. Ross II
JOSEPH L. ROSS II
Assistant Federal Public Defender
Attorney for Respondent
Office of the Federal Public Defender
150 Fayetteville Street
Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Joseph_Ross@fd.org
Pennsylvania Bar No. 61722
LR 57.1 Counsel
Appointed

/s/ Robert E. Waters
Robert E. Waters
Assistant Federal Public Defender
Attorney for Respondent
Office of the Federal Public Defender
150 Fayetteville Street
Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Robert_Waters@fd.org
North Carolina Bar No. 32985
LR 57.1 Counsel
Appointed

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon:

**Michael D. Bredenberg**
Federal Medical Center
P. O. Box 1600
Butner, NC 27509
Email: mbredenberg@bop.gov

**G. Norman Acker, III**
**R. A. Renfer , Jr.**
**Joshua B. Royster**
U.S. Attorney's Office
310 New Bern Ave.
Suite 800
Raleigh, NC 27601-1461
Email: norman.acker@bop.gov
Email: rudy.renfer@usdoj.gov
Email: joshua.royster@usdoj.gov

by electronically filing the foregoing with the Clerk of Court on December 27, 2011, using the CM/ECF system which will send notification of such filing to the above.

This the 27th day of December, 2011.

/s/ Robert E. Waters
Robert E. Waters
Assistant Federal Public Defender
Attorney for Respondent
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
E-mail: Robert.waters@fd.org
North Carolina Bar No. 32985
LR 57.1 Counsel
Appointed