IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

5:07-HC-2042-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| BYRON NEIL ANTONE, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court for a determination of whether respondent Byron Neil Antone ("respondent") should be committed as a sexually dangerous person pursuant to 18 U.S.C. § 4248 ("§ 4248"). Pursuant to 28 U.S.C. § 636(b)(1)(B), an evidentiary hearing was held before United States Magistrate Judge James E. Gates, who entered a memorandum and recommendation (DE # 114) ("M&R") wherein he recommends that the court find respondent is not a sexually dangerous person. Petitioner filed objections to the M&R, along with supplemental authority. Respondent has responded to the objections. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court finds that respondent is a sexually dangerous person and commits him to the custody of the Attorney General pursuant to § 4248.

### BACKGROUND

The procedure for commitment under § 4248 was enacted as part of the Adam Walsh Child Safety and Protection Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (2006) (hereinafter "Adam Walsh Act"). The statute authorizes the government to certify for commitment individuals within the custody of the Bureau of Prisons ("BOP"). 18 U.S.C. § 4248(a). Such certification automatically stays the person's release from custody, pending completion of the § 4248

proceedings, despite the expiration of the incarcerative portion of the person's criminal sentence. Id.

The government initiated this action by filing its certification of respondent as a sexually dangerous person on February 23, 2007. At the time, respondent was serving a term of 114 months imprisonment in the BOP for his 2002 conviction in the District of Arizona for aggravated sexual abuse. His projected date for release from criminal confinement was February 27, 2007, but the filing of the certification stayed his release.

## DISCUSSION

A.   Standard of Review

The court designated the magistrate judge to conduct an evidentiary hearing and to submit proposed findings of fact and recommendations for the disposition of the commitment petition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (b)(3).[1] The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Absent a specific and timely filed objection, the court reviews only for "clear error" and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, the court may "accept, reject, or modify, in whole or in

---

[1] Respondent objected to the referral of this case to the magistrate judge for an evidentiary hearing and M&R, but acknowledged the court has authority to do so. See Mot. Reconsideration (DE # 83) 4; Order Denying Mot. Reconsideration (DE # 92) 3. Respondent filed a notice of appeal of the court's denial of his motion for reconsideration of the referral (DE # 93), but later voluntarily dismissed the appeal. See Mot. Dismiss (DE # 19) and Order of Voluntary Dismissal (DE # 20), United States v. Byron Neil Antone, No. 11-2151 (4th Cir. Jan. 31, 2012).

2

part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

To obtain a commitment order pursuant to § 4248, the government must prove by clear and convincing evidence that the person

(1) "has engaged or attempted to engage in sexually violent conduct or child molestation" in the past, 18 U.S.C. § 4247(a)(5);

(2) currently "suffers from a serious mental illness, abnormality, or disorder"; and

(3) as a result of the illness, abnormality or disorder, "would have serious difficulty in refraining from sexually violent conduct or child molestation if released," 18 U.S.C. § 4247(6). See United States v. Hall, 664 F.3d 456, 461 (4th Cir. 2012).

"[C]lear and convincing has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable." Hall, 664 F.3d at 461 (quoting Jimenez v. DaimlerChrysler Corp., 269 F.3d 439, 450 (4th Cir. 2001) and citing Addington v. Texas, 441 U.S. 418, 423–24 (1979)).

B.   Adoption of the Magistrate Judge's Unchallenged Findings

Petitioner does not object to the magistrate judge's findings of historical fact (M&R, § IV, pp. 13-30), nor his determination that respondent has engaged in sexually violent conduct and child molestation, establishing the first element for commitment (M&R, § VII.B, pp. 55-56). The court hereby adopts those findings as if fully set forth herein. With the exception of the testimony of Anne Schauder, which, as described below, is irrelevant and will not be considered, the court adopts the magistrate judge's findings and credibility determinations related to lay witness testimony (M&R,

§ V, pp. 30-33). Finally, the court adopts the unchallenged findings of the magistrate judge that respondent suffers from polysubstance dependence and does not suffer from borderline personality disorder, depressive disorder, frotteurism, or paraphilia NOS, hebephilia (M&R, § VII.C, pp. 56-57, 59-60, 67-68).

C.   Petitioner's Objections to the M&R

   1.   Burden of Proof

Petitioner first objects to what it perceives as the magistrate judge's application of a higher standard of proof than clear and convincing evidence. Petitioner argues, for example, that the magistrate judge applied an improper standard in his determination as to the existence of paraphilia not otherwise specified ("NOS"), nonconsent as a valid diagnosis, and whether respondent's sexual offense conduct resulted from his substance abuse rather than paraphilia NOS, nonconsent or antisocial personality disorder. Notwithstanding the petitioner's objections, the magistrate judge applied the proper standard of review. Nevertheless, because petitioner has specifically objected to the magistrate court's findings with regard to the diagnoses of paraphilia NOS, nonconsent and antisocial personality disorder and how those conditions affect his behavior and volitional control, the court will conduct a de novo review of these findings, as described below. The court will apply the clear and convincing evidence standard to its de novo review.

   2.   Weight Given to Expert Evidence

Petitioner next objects to the magistrate judge giving greater weight to the opinions of Dr. Roy Daum than those of Dr. Amy Phenix and Dr. Manuel Gutierrez. The court has conducted a de novo review of the reports and testimony provided by each expert and considered the appropriate weight to be given. The court specifically overrules petitioner's objections to the qualifications of

4

Dr. Daum and finds that he is qualified to provide his expert opinion. The court's analysis of the expert evidence is provided below.

    3.      Validity of Diagnosis of Paraphilia NOS, Nonconsent

Third, petitioner objects to the magistrate judge's conclusion that paraphilia NOS, nonconsent is not a valid diagnosis. The magistrate judge determined that the government failed to prove that paraphilia NOS, nonconsent is a disorder that exists among the population generally. Although extensively debated among the psychological community, it has not been adopted for inclusion in the Diagnostic and Statistical Manual of Mental Disorders (DSM), a near-universally accepted resource for the classification of psychological conditions. However, "the reach of section 4248 is not limited to the specific conditions listed in the DSM." United States v. Carta, 592 F.3d 34, 41-42 (1st Cir. 2010). The Fourth Edition, text revision of the DSM ("DSM-IV-TR"), the current version of the reference, defines "paraphilia" as "recurrent, intense sexually arousing fantasies, urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one's partner, or 3) children or other nonconsenting persons that occur over a period of at least 6 months." DSM-IV-TR 566 (emphasis added). The fact that the definition of "paraphilia" itself contemplates nonconsenting persons gives credence to the validity of paraphilia NOS, nonconsent as a diagnosis. The court finds that although paraphilia NOS, nonconsent is not specifically included in the DSM, the term could conceivably be used to describe a person with abnormal sexual arousal toward nonconsenting sexual encounters. Furthermore, such a condition could conceivably meet the statutory definition of a serious mental illness, abnormality, or disorder for purposes of § 4248 commitment. In deciding whether respondent actually suffers from such a condition, the court has considered the debate among the psychological community as to the validity

5

of the diagnosis. As described below, the court finds that petitioner has failed to prove that respondent suffers from a paraphilic disorder characterized by arousal to nonconsensual sexual encounters.

    4.       Whether Respondent Suffers from Paraphilia NOS, Nonconsent

Fourth, petitioner objects to the magistrate judge's conclusion that respondent does not suffer from paraphilia NOS, nonconsent. Although the magistrate judge found paraphilia NOS, nonconsent is not a diagnosis that has been shown to exist generally in the population, he nevertheless considered whether respondent individually suffers from a disorder characterized by abnormal arousal toward nonconsensual sexual encounters.[2]

The court has conducted a de novo review of the record and concludes that petitioner has failed to prove that respondent suffers from a paraphilic disorder characterized by arousal to nonconsenting sexual encounters. The court is not clearly convinced that respondent is specifically aroused to the nonconsenting aspect of his sexual offense conduct. Instead, the court finds it more likely that respondent was aroused by his victims themselves, rather than specifically by their nonconsent.

As described below, however, the court finds that respondent's other mental conditions cause him serious difficulty in controlling his sexual urges when confronted with the nonconsent and even violent resistance of his victims.

---

[2] In another case, the magistrate judge similarly found that the government had failed to prove that paraphilia NOS, nonconsent is a disorder found among the general population, but that the respondent in that particular case did in fact suffer from a paraphilic disorder characterized by his impulse to engage in nonconsensual sexual encounters. Memorandum and Recommendation, United States v. King, No. 5:10-HC-2009-FL (DE # 94) at 60 (E.D.N.C. Mar. 1, 2012) (Gates, M.J.).

6

5.    Whether respondent suffers from antisocial personality disorder

Fifth, petitioner objects to the magistrate judge's conclusion that respondent does not suffer from antisocial personality disorder. As described below, the court finds by clear and convincing evidence that respondent does suffer from antisocial personality disorder.

    6.    Whether respondent would have serious difficulty refraining from sexually violent conduct or child molestation if released.

Sixth, petitioner objects to the magistrate judge's conclusion that respondent would not have serious difficulty refraining from sexually violent conduct if released. After a careful review of the entire record, the court concludes that respondent's volition is impaired by his serious mental conditions, and the "serious difficulty" element required for commitment is established. The court's analysis is described more fully below.

    7.    Admissibility of Anne Schauder's Testimony

Seventh, petitioner objects to the admission of Anne Schauder's testimony. Schauder is a United States probation officer who testified about how sex offenders are supervised in the District of Arizona, which is where respondent would likely live if released. During the hearing, Petitioner objected to the admission of Schauder's testimony on the grounds of relevance. In its objections to the M&R, petitioner advances additional grounds for excluding the testimony. Schauder's testimony would have been relevant if respondent were still subject to a term of supervised release, as was the understanding of the court and both parties at the time of the evidentiary hearing. Subsequent to the issuance of the M&R, however, the Ninth Circuit decided that a § 4248 detainee's term of supervised release is not tolled while he remains in custody awaiting a commitment hearing after the incarcerative portion of his criminal sentence expires. United States v. Turner, — F.3d —, No. 11-10038, 2012 WL 3185954, at *8 (9th Cir. Aug. 7, 2012). Numerous district courts in other

7

circuits have reached the opposite conclusion, holding that supervised release does not commence until the detainee is either committed or actually released into the community. See, e.g., Tobey v. United States, 794 F. Supp. 2d 594, 601-02 (D. Md. 2011) (denying habeas petition, holding supervised release term was stayed while offender awaited civil commitment proceeding), appeal dismissed as moot, 470 F. App'x 113 (4th Cir. 2012) (noting respondent, in connection with settlement of § 4248 commitment action, had stipulated that supervised release term was tolled, obviating need for judicial review of respondent's appeal); United States v. Revland, No. 02–CR–4025–DEO–1, 2011 WL 6780868, ay *2-*3 (N.D. Iowa Dec. 27, 2011) (denying motion to terminate supervised release, holding supervised release term was tolled when commitment action was commenced, relying on United States v. Johnson, 529 U.S. 53, 54 (2000) (holding defendant could not reduce term of supervised release by the time he spent serving vacated convictions)); United States v. Francis, No. 03–166–KSF, 2011 WL 1642571, at *3 (E.D. Ky. May 2, 2011) (denying motion to clarify terms of supervised release, holding that once offender's release was stayed by pending civil commitment action, supervised release does not commence until district court either civilly commits him or determines he is not sexually dangerous and should be released to the community); United States v. Wilkinson, No. 1:CR–93–158, 2010 WL 598609, at *5 (M.D. Pa. Feb. 17, 2010) (construing motion for reduction of supervised release as habeas petition under 28 U.S.C. § 2241 and denying it based on Johnson). Nevertheless, the holding in Turner controls in respondent's case because respondent was convicted and sentenced within the Ninth Circuit in the District of Arizona. Respondent's term of criminal confinement expired on February 27, 2007. See Certification of Sexually Dangerous Person (DE # 1-2) at 1 ¶2. Therefore, his five-year term of supervised release expired on February 27, 2012. Consequently, Schauder's testimony is not

8

relevant, and it will not be considered. The court need not decide whether petitioner's additional grounds for its objection to the testimony warrant exclusion.

        8.      Excluded Portions of Dr. Phenix's Report

Finally, petitioner objects to the magistrate judge's order excluding the portions of Dr. Phenix's supplemental report which were derived from her clinical interview with him and were not either disclosed in her deposition or elicited without objection in her testimony during the commitment hearing. After conducting a de novo review, the court adopts the reasoning of the magistrate judge and will not consider the excluded material. The court adopts respondent's statement of opinions to be excluded (DE # 99) subject to the exceptions delineated by the magistrate judge (see M&R at 6 n.2).

D.      Analysis of Respondent's Sexual Dangerousness

Upon careful review of the entire record, and for the reasons that follow, the court concludes that respondent is a sexually dangerous person within the meaning of 18 U.S.C. § 4248.

        1.  Factual Summary

The court adopts the factual findings of the magistrate judge as noted above, and provides the following summary drawn therefrom. Respondent is a 40-year-old Native American male. He was raised on the Tohono O'odham Indian Reservation in Arizona by his mother and other relatives. He did not meet his father until he was 15 or 16 years old. When he was seven years old, he was sexually abused by his aunt, who was 17 or 18 years old. Many of his family members abused alcohol heavily. Respondent first consumed alcohol at age 9, and began drinking heavily at age 12. By the time he was 17, he was drinking to the point of blacking out as often as every other day. Respondent was an unruly child, resulting in his expulsion from school and multiple different living

situations when successive caregivers could not control his behavior.

Respondent has never married. He has been involved in two intimate relationships. The first, with a woman named Shawna, began when respondent was 18, and lasted for one year. The second, with Tanya McCloud, lasted about six years and produced a son.

Respondent's sexual misconduct spans at least nine years and involves seven known victims. In 1989, when respondent was 16 or 17, he fondled his 13-year-old female cousin, identified as T.F. In 1990, when he was 18, he raped his 16-year-old cousin, identified as V.R. #1, whom he considered his girlfriend. They had engaged in consensual intercourse once prior to the rape. He served about six months in tribal jail resulting from this rape. In 1992 or 1993, respondent raped another female cousin, V.R. #2, the sister of V.R. #1. Respondent admitted in 1999 that there were occasions between 1992 and 1998 when he became intoxicated and forced intercourse with McCloud when she refused. In 1996, respondent fondled his cousin, R.A., 11, over her clothing. In 1997, respondent, 24, rubbed the buttocks of his cousin, T.F., age 21. Later in 1997, respondent sexually assaulted another cousin, C.R. As she struggled, he told her she should let him have sex with her. She was able to escape by jumping out a window. Also in 1997, when respondent was 25, he raped R.J., age 20, the sister of respondent's half-brother. After the rape, respondent asked her, "Don't you want me?" and "You can give it to Eric and you can't give it to me." At the time, respondent was in a relationship with McCloud, who was about eight months pregnant. The court finds that respondent was intoxicated during all of the sexual misconduct described above.

Respondent has a history of depression with at least three suicide attempts.

Respondent has never received sex offender treatment. He has received substance abuse treatment while incarcerated, and there is no evidence he has used alcohol or other substances in

10

prison. He has been sanctioned four times while in BOP custody, including once for fighting in 2000 and once for assault with serious injury in 2004. He otherwise has a favorable work history while in custody, has learned skills such as beading and playing guitar, and has sought informal counseling.

    2.    Elements Required for Commitment

        a.    Previously engaged or attempted to engage in sexually violent conduct or child molestation

There is no dispute as to whether respondent has engaged or attempted to engage in sexually violent conduct or child molestation. He has committed at least four rapes and an attempted rape, and he has committed child molestation on two occasions. Therefore, the first element required for commitment is established by clear and convincing evidence.

        b.    Suffers from a serious mental illness, abnormality, or disorder

As to the second element for commitment, the court finds, by clear and convincing evidence, that respondent suffers from two serious mental illnesses, abnormalities, or disorders. The magistrate judge found that respondent suffers from polysubstance dependence, and that it is a serious mental illness, abnormality, or disorder. M&R at 56. The parties do not object to this finding, and the court adopts it.

The court further finds, by clear and convincing evidence, that respondent suffers from antisocial personality disorder, and that it is a serious mental illness, abnormality, or disorder. To support his conclusion the government had not proven respondent currently suffers from antisocial personality disorder, the magistrate judge relied on the fact that respondent has been generally compliant while incarcerated for the past 13 years, which is the majority of his adult life. The court, however, finds that respondent's relatively good institutional conduct is far overshadowed by his

11

overwhelming pattern of lawbreaking and disregarding the rights of others, beginning before age 15. This extensive pattern is characterized by some nonsexual violence, but predominantly manifested by frequent heinous sexual offenses continuing well into adulthood. Furthermore, the court is not convinced by Dr. Daum's suggestion that the general lack of jobs on the reservation accounts for respondent's checkered employment history. Instead, the court attributes respondent's failure to maintain steady employment to his general irresponsibility, which also contributes to his antisocial personality diagnosis. The court credits the opinions of Dr. Phenix and Dr. Gutierrez that persons suffering from antisocial personality disorder may behave well when subjected to the rigorous structure of prison, but often quickly return to antisocial behavior when released into the community. Additionally, while respondent's institutional conduct has been good compared to the near decade-long span of repetitive sexual violence, his prison term has not been without incident. He has been sanctioned twice for fighting, twice for other rule violations, and has had inappropriate materials confiscated from his cell. For these reasons, the court finds by clear and convincing evidence that respondent presently suffers from antisocial personality disorder.

The court finds that petitioner has failed to prove by clear and convincing evidence that respondent suffers from a paraphilia characterized by arousal to nonconsent. In reaching her diagnosis of paraphilia NOS, nonconsent, Dr. Phenix relied on her assumption that respondent sought out nonconsenting victims despite the availability of willing sexual partners. Dr. Phenix's analysis, however, fails to properly account for the fact that respondent at least two of respondent's rape victims, V.R. #1 and McCloud, were at one time willing sexual partners. The court also notes respondent's statements while sexually assaulting C.R. and after the rape of R.J. indicated that respondent expected them to consent to his sexual advances. Furthermore, the court adopts the

12

reasoning of the magistrate judge that the polygraph evidence indicating deception in respondent's negative answer when questioned if he has <u>ever</u> masturbated to a rape fantasy should not be interpreted to mean that respondent has frequent or recurrent thoughts of arousal to nonconsent. Accordingly, the court adopts the conclusion of the magistrate judge that petitioner failed to prove respondent suffers from a paraphilic disorder characterized by arousal to nonconsent.

    c.  Serious difficulty refraining from sexually violent conduct or child molestation if released

As to the third element, the court finds by clear and convincing evidence, that as a result of respondent's particular expression of polysubstance dependence combined with antisocial personality disorder, he will have serious difficulty refraining from sexually violent conduct or child molestation if released.

The Fourth Circuit has noted,

> Determining whether an inmate will have serious difficulty refraining from reoffending requires the court to "evaluate[ ] the individual's present mental condition and the likely prospective effect of that mental condition on his volitional control." . . . This forward looking inquiry, which attempts to predict the inmate's "ability to refrain from acting in accord with his deviant sexual interests," . . . requires consideration of the grip strength of the mental illness on the inmate – the extent to which the inmate is controlled by the illness.

<u>United States v. Wooden</u>, — F.3d —, No. 11-7226, 2012 WL 3866541, at *18 (4th Cir. Sept. 6, 2012) (quoting <u>United States v. Francis</u>, 686 F.3d 265, 275 (4th Cir. 2012)).

Respondent admits that he is and will always be an alcoholic. To his credit, respondent has participated in substance abuse treatment and evidently has refrained from using alcohol and drugs while incarcerated. Although alcohol and drugs are certainly present where respondent is housed, they are contraband, and their availability is considerably limited compared to the access respondent

13

would have to such substances if he were to be released. Thus, the risk that respondent will relapse into abusing alcohol and other substances would be much higher in the community.

Although it is not clear that respondent is aroused specifically by nonconsensual sex, the court finds that respondent has serious difficulty controlling his sexual urges which lead to violent sexual attacks. The court is convinced that if respondent uses alcohol he will have serious difficulty stopping himself from sexually attacking persons he finds desirable, despite their nonconsent. When the target of his sexual advances rebuffs him, even with intense physical resistance, respondent's antisocial personality disorder, combined with the disinhibition resulting from the abuse of alcohol and drugs, impairs his volition making it seriously difficult for respondent to stop himself. This volitional impairment has resulted in a consistent pattern of numerous violent sexual attacks in the past, and the court finds that the impairment will persist if respondent is released.

Dr. Phenix testified that paraphilia NOS, nonconsent would be the primary cause of respondent's serious difficulty in refraining from sexually violent conduct, but she testified that he would have serious difficulty refraining even without the paraphilia NOS, nonconsent diagnosis. The court agrees with the latter conclusion.

The magistrate judge placed significant weight on his understanding that respondent would be subject to five years of supervised release when he returns to the community. M&R at 70-71. Dr. Daum, in reaching his opinion that respondent would not have serious difficulty refraining from reoffending sexually, also gave considerable weight to the structure and required treatment supervised release would provide. As discussed, supra, respondent's supervised release term has expired under the law as it stands in the Ninth Circuit. Accordingly, the great weight that both the magistrate judge and Dr. Daum ascribed to the protective effect respondent's supervised release

would have on his ability to refrain from sexually violent conduct or child molestation can no longer be so ascribed.

The court is encouraged by respondent's acknowledgment that he would benefit from sex offender treatment. The court finds that he needs it. Furthermore, respondent's belief that he would benefit may lead him to participate more meaningfully than he would if he did not believe it would help him. Meaningful participation would certainly increase the likelihood that any treatment would be successful in reducing respondent's risk of reoffense. Were the court to order respondent's release, however, there would be no means of requiring him to undergo sex offender treatment.

Although the court is ordering respondent committed, this determination does not necessarily mean that respondent will be confined for the rest of his life. The statute provides for periodic review of the propriety of commitment. An annual report on respondent's condition will be submitted to the court, pursuant to 18 U.S.C. § 4247(e)(1)(B). Furthermore, the director of the facility where respondent will be housed may prompt the court to release respondent by certifying to the court "that he is no longer sexually dangerous to others, or will not be sexually dangerous to others if released under a prescribed regimen of medical, psychiatric, or psychological care or treatment[.]" 18 U.S.C. § 4248(e). Finally, after the expiration of 180 days following each determination by the court regarding respondent's commitment, respondent may move for a hearing to determine whether he should be discharged. 18 U.S.C. § 4247(h). Should respondent participate and complete significant treatment while committed, the court will consider his discharge in proper course.

## CONCLUSION

For all of the foregoing reasons, the court hereby FINDS that respondent is a sexually

15

Case 5:07-hc-02042-FL   Document 123   Filed 09/25/12   Page 15 of 16

dangerous person within the meaning of 18 U.S.C. § 4247(a)(5) and (6).

IT IS THEREFORE ORDERED that Respondent is hereby COMMITTED to the custody of the United States Attorney General as a sexually dangerous person pursuant to 18 U.S.C. § 4248(d).

SO ORDERED, this the 24th day of September, 2012.

_____
LOUISE W. FLANAGAN
United States District Court Judge